Mr. Zenger, I am here on behalf of Envision, the appellant, and I would like to reserve four minutes for rebuttal, if I may. Your Honor, I would like to make an overall comment in terms of what would be useful to me. I found the briefs difficult to follow in this case, and the absence of articulated district court opinions leaving me with not that much understanding of what went on in the underlying case, which is everything here. So to the degree you can eliminate that, it would be really helpful. Thank you very much. I intend to do so. In this case, I'm not going to spend a lot of time on any arguments made by the appellee regarding the timeliness of the appeal, but I just want to say this briefly, that if you have any questions, I'd be happy to answer them. The rules clearly state that a separate judgment does not have to be entered for attorney's fees to be entered, and then subsequently attorney's fees can be addressed, and those attorney's fees then become part of that earlier judgment. But they don't require a separate judgment. But they also state that when a request for attorney's fees is made under Rule 58c-2, that that's the effect of making a request for the amendment of judgment, because at the time the judgment was given, there were no attorney's fees awarded, and a motion is made, and then a motion is made to add them, and so that's like amending the judgment. And in this case, that happened twice, and clearly we filed our papers in the time required before the disposition of that last motion to amend the judgment. And so under Federal Rule of Appeal Procedure 4, Civil Rules of Procedure 58 and 59, we actually filed our appeal before we needed to, because the time ran from the disposition of the last motion to amend the judgment, and that disposition was June 8th. We filed our motion earlier in May, and under the rules, if you file it before the decision is actually made, it becomes effective when the decision is made. So I'm not going to belabor that any more than to say that. But I would like to jump in to let you know what happened in the underlying case. This is a case in which things got turned a little bit on their heads, if you will. The plaintiff in this case had, in the mid-1990s, began assisting lawyers in marketing their legal services, and what he did was he came up with clever copyrighted works and trademark slogans, which he then began licensing to lawyers around the country to use in connection with their practices. And he did this much like Wilson Sporting Goods licenses their name. Wilson doesn't make or manufacture goods. They just license the name in connection with products that have a suitable quality. So in this case, the plaintiff in vision had developed copyrighted scripts, copyrighted advertising materials and slogans, and then started licensing these to lawyers. He had done this for years before the defendant in this case, Mr. Lerner, ever even heard of these copyrighted works or these slogans. So what does that tell us? The undisputed evidence at trial was that the plaintiff appellant had used the copyrighted works and the trademarks in interstate commerce for years before Mr. Lerner ever even heard of them. I can't even depend on whether it is a use of a trademark in interstate commerce to license an advertising slogan to somebody else. That's correct. But what he did also, he added to that use the purchase of a registration. The purchase of a registration and the goodwill associated with that registration for the mark, one call, that's all, in connection with legal services. So he has common law use to which he adds a registration. Am I wrong in believing that the central legal issue in the underlying case was whether that was a common law use? No. I don't understand that to be the central issue in the underlying case. The use was a licensing of the ability to use the phrase. Was that the use? The phrase on the copyrighted materials, yes, Your Honor. Without any attachment to any product that he was marketing. The plaintiff was not a lawyer. He was an advertising company. He was not controlling the use of his mark by lawyers in any, in terms of quality or anything else. He was simply licensing. It was not a, the evidence at trial was that he did six or eight items, and I've listed them in my brief, as to controlling the use of a trademark and the use of the copyrighted materials. Look, he cannot govern what a lawyer does. We concede that. He cannot say lawyer, a non-lawyer cannot say to a lawyer, you do X, Y, and Z. My understanding is that for copyright, this doesn't particularly matter, that you can just license the copyrighted material. Yes. But it does matter for trademark. It may. But there are cases also that indicate that a person has to take the reasonable steps to ensure quality control, and the evidence at trial showed this. Mr. Lerner, before licensing, offered competent legal services. It was the understanding that he would offer those same quality of competent services if licensed, and the testimony at trial was that while he was using that trademark, he offered the same competent legal services, that is, that the quality of those services did not change. So in this case, the licensor had done all that occurred, permitted them to the law, to ensure that the quality of services remained the same and acceptable. And under the case law, that's all a licensor has to do in the circumstances where he can't control every detail of what the licensee is going to use. And those cases are cited in the brief. So what happened then in this case was armed with copyrighted works, armed with a common law use, armed with a registration, then he went to Mr. Lerner, whose practice admittedly in the trial record was failing. And once he had even filed bankruptcy, he takes these slogans and these copyrighted admits that they were clever, that they were successful, that they were useful, and that they were a key component in making his practice successful. Now... That was something, one call, whatever. One call, that's all. One call, that's all. That's right. And that hadn't been used for other people before, right? Not in the West Vegas area, no. Elsewhere it had? Yes. In fact, it had, and the evidence at trial was it had been licensed to them. That it had been licensed in a number of other states. And so what we have is we have acquiescence by a number of licensees in the United States that it's a mark, that it's viable, that it's helpful, and that it's useful. So what was the argument? I do wish the district judge had explained himself a little here because he doesn't really do that. What is your understanding of the reason why the district court found that this was an exceptional case for trademark purposes? The district court based it on two things. One, a special jury interrogatory in which the jury checked or wrote on a line that said, was the plaintiff's subsequent use of the mark with another licensee a willful infringement? And the jury checked or wrote in yes. That's one reason. The other reason was that there was a finding that subsequent use by the plaintiff with another licensee would cause, would be likely to cause confusion, and the jury said yes. Based on those two indications on the jury interrogatory alone, the district judge entered the order. But those two things only would probably support a wilfulness finding if there was no viable defense to the infringement in the first place. But your argument is that there was, that you did have a trademark. I guess what I'm asking is what was the argument at trial about why your trademark intention was improper? In other words, on what basis did you lose what I understand to be your argument, which is we did have a valid trademark all along, so we weren't infringing anybody? It isn't exactly clear, but there was a jury interrogatory that may have supported that finding when the jury made a determination that when the appellant purchased the trademark registration that he couldn't do that. For some reason he couldn't do that, and it isn't explained why. But he did. He paid valuable consideration. The transfer included the registration and the goodwill. He paid $100,000 for it. But somehow the jury found that that was an invalid transfer of that trademark registration. He paid $100,000, you say, for it? Yes, sir. And so what our view is with respect to this whole charge. The plaintiff thought he had the trademark is your argument. Even if he really didn't, he thought he had it. He had used it, and then he purchased a similar registration for which he paid the $100,000, yes, sir. So there was some reasonable basis, you're arguing, for him to conclude that he owned this mark. Absolutely. Now, if there were a reasonable basis for him to conclude that he was the owner of the mark, could there still be a trademark violation if he weren't? I guess there possibly could be, Your Honor. Pardon me? I guess there possibly could be. And then the question would be, but were the actions of your client, in this case, willful and exceptional or whatever that is, to warrant an imposition of attorney fees? Yes, sir. Given what you would argue would be a reasonable belief in trademark ownership? Yes, sir. Now, you appear at points to be arguing that there has to be a bad faith finding, but that's not true under Ninth Circuit law. And you don't need that on your theory of the case, as I understand it, either. Well, my understanding is the following, Your Honor. First, it's a totality of the circumstances consideration. It's not just some isolated set of considerations, but you look at the totality of the circumstances. To determine what? To determine whether it's an exceptional case. Okay. The appellee has asserted that mere willfulness or deliberateness is enough, and in that case he cites Earthquake Sound Corporation, 352 F. 3rd, beginning at 1210. But I want to go to that very case because I think it's important. That statement has to be taken in the context of that case. That was a case, first, it was decided on summary judgment by the court. In other words, the court made a finding of willfulness and deliberateness, and the court knows what that is because the court is legally trained. Our case is different from that in the following circumstance. This determination of willfulness was made by an uninstructed jury. Why do you think that that's what the district court relied on in his determination of exceptional? Well, because I think it's important because the language that the appellee cites as the controlling law has to be understood in the context of a judge having decided that. I understand that, but I'm asking you what makes you think this judge didn't decide it? Because there's no finding in his order, no separate findings. He had no trial on willfulness or deceit or bad faith. Did the judge sit there during the jury trial? He was present, Your Honor. Okay. But he made no separate. He made no separate. The evidence of actual confusion and the other evidence presented in the case together with the jury's finding of willful infringement, he finds it to be exceptional. So he seems to be saying that it wasn't just because of that. Well, great. Then he hasn't told me what it is so that I can appeal it. He hasn't. He hasn't told me, so I don't know. He could tell us more about a lot, but is there a requirement that he do that? Yes, there is. I believe that where there is a finding that is part of the judgment, that that judgment, that there has to be articulated findings, and I'm not exactly sure whether that's under Rule 54 or 58. I don't recall. That makes it even worse. A judge trial, which this isn't exactly. If I don't even know. But the reason why I think there is more than just a deliberateness requirement is as follows, and I'm referring now to the, again, back to the earthquake case, and I'm now on page 1220. And in the concurring decision, Judge Ferguson wanted to make clear what the court had done in this case. And he said, quote, This circuit has adopted the committee on the judiciary's recommendation that attorney's fees should be available under the Lanham Act, quote, in exceptional cases, comma, i.e., in infringement cases, where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful. And then there's a cite, and it goes on, quote, In Lindy v. Penn, 982 F. 2nd, 1400, we explained that willful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forcible labels, such as deliberate, false, misleading, or fraudulent, to conduct conduction of the standard. The problem is that Judge Ferguson was concurring, and he was disagreeing with the analysis of the majority in the earthquake case. Well, I don't find him disagreeing with the analysis because you need to. I do not concur in the analysis set forth by the majority because that analysis fails to acknowledge that willful and deliberate in the context of attorney's fees does not mean merely voluntary or intentional. Okay. Well, I think he's simply explaining what not merely voluntary or intentional means because here we have nothing in the jury instructions or in the jury findings that the plaintiff's acts were anything more than voluntary or intentional, nothing. I'm a little baffled by your argument because as I understand where you came in from was that you seemed prepared to argue that you weren't willful in any sense of the word, that your client had a non-frivolous belief that he had a valid trademark, didn't intend to be infringing anybody's anything, and so on. So why are you just standing on that? Why are you trying to tell us that something else would be needed? Well, I'm just indicating because that's the factual underpinnings, but I believe that there has to be something more than this voluntary or intentional amount, and from the jury's finding there doesn't seem to be anything more than that. Yes, I agree that there was no we were never willful. But the jury found you were willful. The jury wrote on a line was the infringement willful, yes, but that's why I'm distinguishing between our case and the earthquake case. The earthquake case was decided by a knowledgeable judge. Was there an instruction to the jury on willfulness? No, there was not. There was no instruction about willfulness? No, and to even emphasize why the lack of that instruction is so important, I specifically request the district judge to instruct the jury that all of the defendant's uses of the mark in order to the benefit of my client, the licensor. I provided the jury instruction, which is the law, and he refused to give it. So now I have not only the lack of a jury instruction saying that all the defendant's uses in order to the benefit of my client, but I also don't have a jury instruction on willfulness. And in that context, this lay jury, the willfulness didn't mean anything. So we don't know what it meant. Why do the defendant's uses in order to your client if you didn't have a valid usage to begin with? Because we were the licensor, and the licensor — But that only depends on whether or not you have authority to license it. But the case law states clearly that the licensor doesn't even have to use it himself. He can license that use, and the use of the licensee in order to the benefit of the licensor. That is the case law. There is nothing to the contrary of the record. Yes, ma'am. And those cases are cited at length in the briefs. So what was the willful infringement? What was the infringement? It happened like this, Your Honor. We had entered into an agreement with Mr. Lerner that he could use our copyrighted materials and our trademarks. He did that for a period of time. After a period of time — And there was nothing wrong with that? No. That was all okay? I think it was three years that went over. It was about two years. Okay. But at the trial, was there claimed to be something wrong with that? My understanding is that there was claim. No. At that time, there was nothing wrong during — There was nothing wrong with it, except that it was claimed that you didn't really have a trademark at that point. Well, he never — at the trial, he claimed that. But during the time that he was using it, he never did. So there came a point in time, Your Honor, when he quit paying us. And so we terminated it. Right. We terminated the agreement under which he was using the copyrighted works and the trademark. And from that termination on, it was our belief that he was an infringer, that he no longer had rights. And so we licensed another person whose law of association — A purely found infringement by your client. By my client. Doing what? For licensing the same part to a third party after we had terminated Mr. Lerner. So that presumably was because of a theory of the understanding that your client never had the trademark because he wasn't using it in commerce, and it was Mr. Lerner who had the trademark because he was using it in commerce. Is that not correct? He took the position that because he was the first one to use it, that he was the only person who could claim rights. And that has to be what the jury found, no? I don't — I guess. But that's why the instruction that those rights belong to the licensor is so critical and that they were denied. I'm sorry? I had, yes, some minutes left. You wanted to reserve. Yes. How much time does he have left? Okay. I'm sorry. That's why the lack of the instruction on who owns the rights between a licensor and a licensee are so critical in this case because the jury was left to think — because there was a jury instruction that said, And then we asked the judge to say, but if they're used by a licensee, they belong to the licensor. He wouldn't give us that second part. So the only thing the jury was left with the instruction was trademark rights derived from use. They say Mr. Lerner used it. The plaintiff was not a lawyer. He couldn't use it. Therefore, it looks like Mr. Lerner owned it, contrary to law. You're not appealing the merits of the case. No, I understand that. But it goes to the reasonableness of the position that we had and the totality of the circumstances at the trial level. Do you want to reserve some time? I did already reserve four minutes. Is my last three minutes up? I had looked, and I was three minutes, and all of a sudden it went to zero. I got very total time. It's your total time, so if you want to reserve time, you should reserve it. All right. Thank you. Thank you. Thank you. May it please the Court? My name is Glenn Lunney. I'm here representing Mr. Lerner and his professional corporation of the same name. It always surprises me when I hear Mr. Zenger describe the case because it's quite different from the one that I experienced. And we are ñ I want to repeat that we're at an enormous disadvantage because the district court cannot explain anything. We have no articulated order about anything. And we have briefs that are somewhat confusing as to what happened below. So to the degree that you can articulate that. Part of the difficulty is that Envision did not choose to appeal the merits. And so we have just the attorney's fee order up here on appeal. The central issue in the litigation itself was whether the license agreement between Mr. Lerner and Mr. Envision, Mr. Bryan, had the requisite quality control that the Trademark Act requires for a trademark license. If there's not a control of the quality of the services, here the legal services, that's what the trademark ñ service mark, really, was registered for, for legal services. You have to control the quality of the legal services being offered under the mark, just like any other franchise arrangement. McDonald's or anyone else has to control the quality of the products that are being offered by its independent franchisees under the mark, or the trademark license is invalid. And the central contention of Mr. Lerner in the litigation from the outset was that he controlled the quality of his legal services, he was the one using the trademark, and therefore he was the proper owner of the trademark. So when the parties had the falling out in March or April of 2001, he felt, and he came to me for legal advice about the issue, but he could continue using the trademark. And he believed that, and he did continue using the slogan, one call, that's all, for his legal services. He'd been using it for several years in Las Vegas. He was well recognized, well known as the one-call attorney. InVision felt, because of a little sentence in their agreement, their advertising agency agreement, which they sort of call a trademark license. And I tell you, if any of my students ever turned this in as a trademark license in response to a granted exercise, it would not pass. Just a little sentence that said, any goodwill generated by the advertisements inures to the benefit of InVision. Entirely unclear what it's supposed to mean, but they claim it's a trademark license. So they claim they're the owner, and they license the Utah attorney to come into Las Vegas, where everyone in the city knew Glenn Lerner is the one-call attorney, and start running ads for a gentleman named Keith Barton under one call, that's all. And so Mr. Lerner's getting calls from consumers, what's your association, what's your affiliation with this man? Well, that part's easy if, in fact, there was an infringement. Right. The problem here is that the – what leads up to that sounds like a fairly technical set of events, which don't sound like the sort of thing that necessarily sets up a willful violation as opposed to a confusion about what the law is. Well, I think we want to be careful about two different issues. One is, is it an exceptional case if InVision had just chose to litigate the ownership without creating the confusion in Las Vegas? If that were the case, they would claim that they had a good faith claim to own the trademark, and they were entitled to litigate those issues before court. And that's fine. Right. I mean, their legal position – But what excuse did they have – Just a minute, please. Okay. Their legal position was that they did own it, and therefore they had the right to do this. So they were acting in one consistent fashion. And if their theory was right, they would have been right. Well, one of the dominant themes of the 20th century was the sort of relinquishment of the right of self-help, of going out and retaking property of your own without sanctity of the court of law. And that's essentially what InVision was doing here. Lerner was going to continue using the trademark in Nevada. The only thing that could possibly result from adding a second lawyer using the same slogan in the same city to that mix is confusion of consumers. And there's simply no legitimate reason. Even if you believe you're the trademark owner, your proper remedy is to go into court, as they did. But they lost their TRO. They voluntarily withdraw their preliminary injunction motion, essentially conceding they're not likely to succeed on the merits. And yet they're continuing to advertise Keith Barton, a Utah attorney in Nevada, under the same slogan. So you think if it had been somewhere else, let's say they were just doing it in Utah. They were doing it in any number of other states. Okay. So you think that that's where it became exceptional? Yes. Is that they did it right where this guy was that they had the dispute with and in your face? They took the risk that they had to know they were going to create confusion. And they took the risk that they were going to lose the case before the jury. I guess their position was that it was your client who was creating the confusion by using a trademark that didn't belong to him. Now, that turns out to be wrong. And they lost the jury verdict. And they're not appealing that. But the exceptional case issue was sort of how wrong? Right. Well, Congress in the congressional report, the Senate report accompanying the amendment that added the attorney's fees provision to the Trademark Act, Section 1115, said that cases of deliberate or willful infringement were sufficient to characterize the case as exceptional. This may be an instance where whoever ended up losing was going to be a willful infringer in the sense that they went ahead and created confusion, knowing that there was a risk that they would not be the trademark. Well, what about the argument that the willful finding by the jury was not a willful finding by the court? Well, there was not an objection to the lack of a jury instruction. And I would point out to the court that the jury instruction that Envision proposed on that issue was that something is willful if it's a knowing and deliberate violation of another's rights. Well, no, but I think what I'm saying is, okay, the jury did find willful. Right. And the court mentions it, but the court doesn't say, you know, I sat there listening to the evidence. I also find that it's willful, and that's why it's exceptional. I mean, do we just infer from that? Or I think that's what I'm hearing counsel argue. Or was it just coincidence that the judge mentioned it in the same? That was certainly not my impression during the argument. And his oral ruling from the bench, if it didn't come through in the written ruling that he provided, it seemed very clear to me that he thought it was a willful infringement. You know, in attorneys' fees cases generally, we do have an articulation requirement by the district court. I don't know whether we've ever applied it to this one, but I am sort of wondering whether the best course at this point would be to remand and ask the district court why he found it willful. Well, I respectfully would disagree with that, Your Honor. I think there is plenty of evidence to that effect. And I think from my own perspective, the claims here that InVision had some trademark ownership are relatively very weak. This notion that you can go out and buy a trademark registration for $100,000 from an unrelated Florida attorney that you have no relationship with and sort of shore up your legal claims is exactly the sort of trying to buy a lawsuit that I think the exceptional requirement is meant to discourage. You're not saying somebody would pay $100,000 for something that they knew was no good. I think people pay $100,000 in litigation all the time for something that will shore up a weak case. Well, yeah. Expert witnesses, testimony, all sorts of things people go out and pay $100,000 for. They ask for millions of dollars in infringement. And if $100,000 is what it takes to get you to the jury, because now you have a registration, a piece of paper in your hand, and they get this presumption of validity that goes along with that, if that's what it takes to get to the jury for a potential multimillion-dollar award, yes, I think people would do that. Now, are you the one that didn't get paid in the attorney's fees part of it? Well, Mr. Lerner paid me. Okay. But by the court. You didn't get attorney's fees by the court. That's correct. Because the judge said that you weren't enrolled until a certain point. Is that? I was hired by Mr. Lerner as attorney about July 2001 when the case first started, and then I did not enroll formally in the Nevada district court until March of 2004. Well, because of this, the way that the order is here, and you review attorney's fees for abuse of discretion, and obviously the other lawyer that was involved, the court did not award a full amount. The court gave some sort of a reduction. That's correct. Now, why — if — you know, what if the court had just said, well, I don't think that what you did was — is, you know, should be awarded as a part of that, and it was an exercise of the court's discretion here? Do you have any recourse then? Well, we could appeal and argue that it was an abuse of discretion, but I don't think that's what the judge said. In his order, I think he was pretty clear, saying as a matter of law, his interpretation of the statutes at issue means an attorney — an attorney's fee would only be somebody who's enrolled as counsel. So that's the way that we would have to find in order to — and then the remedy at that point would then be to look at what your fees were and decide how to review them. Right. I would ask for a remand on that issue, and he would have to look at what was reasonable, and if there was duplication between myself and the other attorney in the case, it should be reduced. Somewhat similarly, to go back to my concern about articulation, my understanding is that we have a two-pronged standard of review here, that the exceptional circumstances is a legal issue, but that there's still discretion as to whether or not to award fees if there is exceptional circumstances. And we don't have any articulation about that. So is that reviewable for abuse of discretion? Well, it is a two-part standard, and I would think that what he said ought to be enough. It's a question of how much detail you really want on the order that the judge makes. I think there's enough here to support the judge's finding in the light of the Ninth Circuit's prior decisions. Well, he made a finding that it was exceptional, but did he make evidence to tell us why he was going to award fees, having found it exceptional? I don't think he broke those two out separately in his order. But they're reviewed separately, and I think in terms of the first issue, the legal issue, the Ninth Circuit law makes pretty clear that once you find willful infringement, that's enough to conclude that a case is an exceptional case, and it's still within the judge's discretion to grant or deny the attorney's fees. And let's assume that willfulness means what you said the instruction would have been, knowing and... Knowing an intentional violation of another's rights. Deliberate. All right. But the jury was not so instructed. Why – on what basis would we find that this was a knowing infringement? Which I assume means knowing that I don't own the trademark he does. Well, I think the basis there would be Congress's concern, and the concern of the Trademark Act generally is to prevent consumer confusion. And so in Earthquake Sound case, the way the concurrence, his concern there was, we don't want willfulness to just be a testing of someone else's rights. We want it to have some real effect on consumers. What about here? I mean, why is this a knowing and intentional infringement? Well, having foregone the preliminary injunction option, having sort of withdrawn their motion once the defendant points out all the flaws in their case, and then to go ahead and intentionally create confusion among Nevada consumers between two lawyers using the same slogan for the same services, I think is precisely the type of willfulness Congress wanted to allow an award of attorney's fees for. So you think we can infer that he knew that he had no legal elect to stand on with respect to his own ownership of the trademark because he didn't seek a preliminary injunction? Well, he did seek it. He asked for it. But then when the defendant filed his memorandum in opposition, he withdrew the motion for preliminary injunction. He did go to trial. Yeah, three years later. So this was 2001 when the preliminary injunction motion was withdrawn. And actually, the defendant was preparing a preliminary injunction motion in September-October of 2001 and only didn't file it because Mr. Barton, the Utah attorney, decided there was too much confusion going on and asked Mr. Bryan of InVision to cease advertising in the Nevada area on his behalf. All right. So at that point, I gather, that there wasn't the confusion was relatively short-lived then. Well, it was only six months or so. Anything else? That's all I have. Copyright issue seems fairly straightforward. I mean, my understanding of what happened there was that there was a directed verdict. They had no registration. I don't really understand why the summary judgment wasn't granted. I'm not entirely sure I wasn't present at the summary judgment. It's not clear to me if there was factual clarity on which works were alleged to be infringed, which were in the registrations, or any of that was brought out at the summary judgment. Of course, the failure to identify all that should have been grounds for summary judgment on its own. I would bring to the Court's attention that there's a little bit of an ambiguity there as to whether the attorney's fee award under the Copyright Act should be under Section 505 for a prevailing party or under the Court's inherent powers, because the failure to get a registration is a jurisdictional defect. There's an unpublished decision in the Ninth Circuit in a case called Cloberdance that the Court would not have jurisdiction to determine that one party was a prevailing party on that basis. And so you couldn't award attorney's fees under Section 505. You'd have to do it under the Court's inherent powers. And the district judge here did it under both. I would bring that to the Court's attention as a complication on the copyright issues. Here there were alternative basis for the directive verdict. So it gets even a little more complicated. But I bring that to the Court's attention. Thank you. Your Honor, I think that a comment that you made regarding confusion about the law and what was going on with who owned what is really the heart of this issue. There were confusions of law, and they were not helped by the district judge's lack of jury instructions. And therefore, in the totality of circumstances, this willfulness finding cannot be upheld. I want to address the copyright issue for a moment. The copyright issue, remember, this case had copyright claims and trademark claims and some other claims, and so there was federal jurisdiction already. And at the point that it was pointed out or that it was discovered that there weren't registrations, a motion for summary judgment was brought to dismiss the copyright claims. And by that time, applications had been made. And I expressly argued to the Court, you can do what you want, dismiss it, but this is what's going to happen. We'll get the registration, we'll file another lawsuit, and we'll bring it back in because this case will be ongoing with other federal claims. And not needing and not seeing a necessity to jump through all those hoops, the judge did not grant their motion for summary judgment, but let us go forward. And those registrations were duly obtained. And then at trial, there was evidence from the witnesses that he had authored the scripts and the copyrighted materials. There was no contest about that. It was uncontested evidence. The defendants themselves put the registrations in. There was evidence that there were registrations. And that makes a prima facie case. But you're not appealing the merits of that either. So therefore, given the prevailing party standard and given the fact that they were the prevailing party and you're not contesting that, what's the problem? The problem is that it's also discretionary award of attorneys fees and it requires also the exceptional circumstances case, and we don't have that. Where is there a law that says that in the copyright context, there has to be exceptional circumstances? I believe that it says that the court may award attorneys fees to the prevailing party. That's what every attorneys fees provision says. And there are umpteenth such provisions with regard to prevailing parties, and it's never understood that there have to be exceptional circumstances. To the contrary, it's basically that you get fees unless there's a good reason why not. Well, I think the good reason why not is we had copyright registrations. The court had already permitted us to go forward on those claims, having denied the motion for summary judgments a year and a half before. So you lost. I know, but I'm just saying that was our good faith basis for continuing to litigate it because the court didn't tell us not to continue with the copyright case. So we continued with it. We brought our evidence on. The court disagreed with the sufficiency of our evidence, but that certainly is not a situation just because someone loses doesn't mean they should. Except for Title VII and 1983 and everything else, that's the reason people get fees. But not in the case. But those same policies are nowhere mentioned in the copyright statute or its enacting legislative history. So I request the court to recognize that, in fairness, what we have here is we have a defendant or a plaintiff who had copyrights, who had trademarks, paid a lot of money for them, used them, licensed them, believed he owned them, and that his litigating was in good faith and that in the totality of the circumstances that is proper. In this case, I would also like to mention the reason for Mr. Lennie's fees not being granted is any lawyer could hire any number of lawyers to tutor him. And that's an expensive Mr. Grant. He couldn't demonstrate that, and if the judge believed that he was the time was duplicative or not to be charged, that's one thing. But the understanding is that that's not what he said. He simply said, you weren't signed up, carry if you lose. That's a different matter. For all anybody knows, he was writing the entire briefs. He wasn't tutoring anybody. Well, that isn't the ---- Didn't the court say as a matter of law that the fact that he wasn't enrolled, that the court wasn't going to consider those attorney's fees? I believe that that was at least one of the basis of the question. Okay. So if that's wrong as a matter of law, then the court's got to look at him and decide what's reasonable. But the reason why I don't think it was unreasonable in this case is because this ---- Well, but we're not there. The court said this category of attorney's fees does not qualify. You were not enrolled, so I'm not even going to look at them. And that's my story, and I'm sticking to it. If that's wrong, then the court's got to at least look at it. Well, there were other bases. Mr. Lennie was a fact witness, enlisted as a fact witness in the pretrial order. He attempted to testify as an expert in the court, cut him off for having filed no expert report. So Mr. Lennie had different roles in this case. He took the stand as a fact witness. And those are all good arguments to make. But if I say as a judge I have no discretion to consider this, you know, as a matter of law, you do not qualify, and I'm wrong, then I'm wrong big time. You could be wrong big time, but I don't believe that that was his only basis because he knew that Mr. Lennie had been there as a fact witness, had never filed a pleading in the case, and had never received any service of anything from the court. Does it tell us that in the order? What does the order tell us? The order says that he did not participate in the litigation until the argument of attorney's fees. I don't think that's a sufficient basis, and not alone, for the judge's ruling to deny Mr. Lennie his fees. It could be suspended. Thank you very much. Thank you, Your Honor, for a useful argument and a useful case.
judges: Thompson, Berzon, Callahan